## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:                                                    CASE NO.: 8:15-bk-04061-CPM
SAREL JACOBUS VORSTER
        Debtor                                    Chapter 13

_____/

### MOTION FOR RELIEF FROM AUTOMATIC STAY

#### *NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING*

*Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at U.S. Bankruptcy Court, Middle District of Florida, George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the Movant's attorney, Suzanne V. Delaney, Storey Law Group, P.A., 3191 Maguire Blvd., Suite 257, Orlando, Florida 32801 within the time allowed.*

*If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant relief requested.*

      COMES NOW, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9 (hereinafter, "Movant"), by and through its undersigned attorney, and moves the Court pursuant to 11 U.S.C., Section 362 (d) and Bankruptcy Rule 4001, for relief from the automatic stay, and states:

1.      SAREL JACOBUS VORSTER. ("Debtor") filed a Chapter 13 Voluntary Petition on April 21, 2015 in Case Number: 8:15-bk-04061-CPM.

2.      The property, which is the subject of this Motion for Relief from Automatic Stay, is as follows:

      **LOT 3, DILLON ACRES ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 40, PAGE 71, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA: AND THE EAST 15 FEET OF THE SOUTH 80 FEET, MORE OR LESS, OF THE**

FOLLOWING DESCRIBED LAND, TO –WIT;THE WEST 231.4 FEET OF THE SOUTH 302.13 FEET OF LOT 62 OF VAN SANT SUBDIVISION, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 8, PAGE 44 OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, SAID STRIP OF LAND EXTENDING FROM SOUTH END OF PUBLIC ROAD, WHICH OCCUPIES A PORTION OF SAID TRACT OF LAND, TO AN CONNECTING WITH, LOT 3 OF DILLON ACRES SUBDIVISION, AS SAME IS RECORDED IN PLAT BOOK 40, PAGE 71, OF SAID PUBLIC RECORDS, AND;THE SOUTH 38 FEET OF THE WEST 231.4 FEET OF LOT 62 VAN SANT SUBDIVISION, AS RECORDED IN PLAT BOOK 8, PAGE 44, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, LESS THE EAST 15 FEET THEREOF.

**Property Address:**    **2106 Dillon Court, Valrico, Florida 33594** (the "Property").

3.    On December 9, 2005, Debtor and Trudie M. Vorster executed a Note (the "Note") payable to Liberty Home Loan Corporation in the amount of $391,515.00 together with interest thereon as set forth therein. A true and correct copy of the Note is attached hereto as **Exhibit A** and is incorporated by reference.

4.    To secure the payment of the Note, Debtor and Trudie M. Vorster executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") acting solely as nominee for Liberty Home Loan Corporation. A true and correct copy of the Mortgage is attached hereto as **Exhibit B** and is incorporated by reference. The Note and Mortgage may be collectively referred to as the "Loan Documents."

5.    The Loan Documents were assigned by MERS as nominee of the Original Lender as evidenced by that certain Assignment of Mortgage dated November 13, 2009 and recorded December 9, 2009 in Official Records Book 19610, Page 63 Hillsborough County Florida ("First Assignment"). A true and correct copy of the First Assignment is attached hereto as **Exhibit C** and is incorporated by reference.

6.    The Loan Documents were then assigned to Plaintiff as evidenced by that certain Assignment of Mortgage dated August 12, 2013 and recorded on August 13, 2013 in Official Records Book 22074, Page 31 in Hillsborough County, Florida (the "Second Assignment"). A true and correct copy of the Second Assignment is attached hereto as **Exhibit D** and is incorporated by reference.

7.    On August 21, 2014, a Consent Final Judgment of Foreclosure (the "Final Judgment") was entered in favor of Movant, in the amount of $494,816.03, regarding the property described above. A foreclosure sale was scheduled for the sale of the Property at auction. A true and correct copy of the Final Judgment is attached hereto as **Exhibit E** and is incorporated by reference.

8.   The foreclosure sale scheduled for April 21, 2015 was cancelled as a result of this bankruptcy filing.

9.   Payments pursuant to the Loan Documents have been in default, and remain in default, since August 1, 2009.

10.  Movant is the owner of the Foreclosure Judgment, which constitutes a lien on the property described above, and Movant is entitled to enforce the Foreclosure Judgment.

11.  Movant requests that the Court grant it relief from the Automatic Stay in this case pursuant to 362(d)(2) of the Bankruptcy Code.

12.  In support of this Motion for Relief, Movant would show that there is no equity in the collateral and that said collateral is not necessary for an effective reorganization of Debtors. Additionally, Movant would show that Debtors have failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in both the Note and the Final Judgment, and, as a result, Movant has incurred bankruptcy attorney's fees and costs necessitated by the filing of this Motion.

13.  Furthermore, Debtor received a discharge of the Loan on March 21, 2015, after surrendering the property in his Chapter 7 case - Case Number 14-14266. As such, the automatic stay should only be in place for a period of thirty (30) days from the date the Petition was filed.

14.  Movant shows that the 2015 Market Value of the above-referenced real property is $226,290.00. A true and correct copy of the print-out from the Property Appraiser's website is attached hereto as **Exhibit F** and incorporated by reference.

15.  Movant submits that lack of adequate protection in this case is the appropriate ground for relief which Movant seeks under 362(d)(2), and that the possible existence of equity over and above the indebtedness, which Movant denies exists, would not, even if it did exist, constitute adequate protection as contemplated by the Bankruptcy Code. Additionally, Movant would show that its indebtedness continues to accrue interest while Debtor enjoys the benefits of the collateral without following the requirements of the Bankruptcy Code.

16.  Movant is receiving no payments from the Debtor to protect Movant against the erosion of its collateral position and Movant is not otherwise being adequately protected.

17.  If Movant is not permitted to enforce its security interest in the collateral or provided with adequate protection, it will suffer irreparable injury, loss and damage.

18.  Movant requests the court to allow future communications directly with the Debtor in order to offer and provide information in regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other Loan Workout/Loss Mitigation Agreement, as well as notices required by state law, and furthermore, to enter into such

agreement with Debtor. Movant acknowledges that such communications shall be limited and it shall not enforce or threaten to enforce any personal liability against Debtor that is discharged in this bankruptcy. Movant further requests permission to reschedule the foreclosure sale pursuant to the Foreclosure Judgment.

19. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Movant requests that the Court waive the 14-day stay period imposed by Fed. R. Bankr. P. 4001(a)(3).

20. The post-petition payment address is **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9**, c/o Selene Finance, LP, 8201 Cypress Plaza Drive, Jacksonville, FL 32256.

**WHEREFORE**, Movant, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9**, prays that this Honorable Court will enter its order terminating, annulling, modifying, or conditioning the automatic stay under 11 U.S.C. § 362(d) to permit Movant to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to reschedule the foreclosure sale, to gain possession of said collateral, and to have such other and further relief as is just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing with attachments has been served either by electronic or standard first class mail this 19th day of June, 2015 to Sarel Jacobus Vorster, 2106 Dillon Ct., Valrico, FL 33596; David Thorpe, The Thorpe Law Firm PA, 7819 N. Dale Mabry Hwy, Suite 108, Tampa, FL 33614 (via e-mail at david@thorpelawfirm.com); Jon Waage, Trustee, PO Box 25001, Bradenton, FL 34206; and United States Trustee – TPA 7/13-7, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602.

Suzanne V. Delaney
Florida Bar No. 0957941
Storey Law Group, P.A.
3191 Maguire Blvd. Suite 257
Orlando, FL 32803
Telephone: 407.488.1225
Facsimile: 407.488.1177
sdelaney@storeylawgroup.com
*Attorney for Secured Creditor*

MIN: 1002837-1200404020-6                          Loan Number: 7200511136

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

DECEMBER 9, 2005                          TAMPA                          FLORIDA
[Date]                                    [City]                         [State]

2106 DILLON COURT, VALRICO, FLORIDA 33594
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 391,515.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is LIBERTY HOME LOAN CORPORATION, CORPORATION (CFL # CL0300215)
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.780 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
(A)   Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the  1st   day of each month beginning on FEBRUARY 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  P.O. BOX 23432, TAMPA, FLORIDA 33623-3432
or at a different place if required by the Note Holder.

(B)   Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,547.17         . This amount may change.

(C)   Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)-Single Family          DocMagic *800-649-1362*
Fannie Mae MODIFIED INSTRUMENT                                   www.docmagic.com
For Use in FLORIDA Only                          Page 1 of 5


EXHIBIT
A

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A)  Change Dates
    The interest rate I will pay may change on the 1st   day of JANUARY, 2008   , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."
    (B)  The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    (C)  Calculation of Changes
    Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 780/1000   percentage points ( 5.780 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
    (D)  Limits on Interest Rate Changes
    The interest rate I am required to pay at the first Change Date will not be greater than 9.780 % or less than 6.780 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000   percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6   months. My interest rate will never be greater than 12.780 %.

    (E)  Effective Date of Changes
    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
    (F)  Notice of Changes
    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.  BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.
    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
    I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)–Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use In FLORIDA Only                    Page 2 of 5

Form 3520 1/01
DocMagic EForms 800 649-1362
www.docmagic.com

6.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.  **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

8.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                                    Page 3 of 5

Form 3520 1/01
DocMagic €Ϝⱒⱖⱃⱄ 800-649-1362
www.docmagic.com

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                                        Page 4 of 5

Form 3520 1/01
DocMagic EForms 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SAREL J. VORSTER                -Borrower

_____ (Seal)
TRUDIE M. VORSTER               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)–Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use In FLORIDA Only                    Page 5 of 5

Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 7200511136

Date: DECEMBER 9, 2005

Borrower(s): SAREL J. VORSTER, TRUDIE M. VORSTER

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 9th day of DECEMBER, 2005 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of LIBERTY HOME LOAN CORPORATION, CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWENTY-FOUR ( 24 ) months after the date the Security Instrument is executed, I make a full Prepayment, I will pay a Prepayment charge in an amount equal to FIVE percent ( 5.000 %) of the outstanding loan balance.

PREPAYMENT ADDENDUM TO NOTE
11/26/03                                    Page 1 of 2                    DocMagic eForms 800-649-1362
                                                                            www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____  12/9/05        _____  12/9/05
Borrower SABEL J. VORSTER        Date            Borrower TRUDIE M. VORSTER        Date

_____  _____        _____  _____
Borrower                         Date            Borrower                          Date

_____  _____        _____  _____
Borrower                         Date            Borrower                          Date

## ALLONGE TO NOTE

Loan Number: 7200511136

Borrower Name: SAREL J. VORSTER, TRUDIE M. VORSTER

Property Address: 2106 DILLON COURT, VALRICO, FLORIDA 33594

Note Date: DECEMBER 9, 2005

Loan Amount: $391,515.00

PAY TO THE ORDER OF        CitiFinancial Mortgage Company, Inc.

WITHOUT RECOURSE ON  DECEMBER 9, 2005

LIBERTY HOME LOAN CORPORATION, CORPORATION

By: CAILYN LOUDON
    SECONDARY MARKETING MANAGER
Its: _____

Loan Number: 7200511136

# ARM PROGRAM DISCLOSURE

This disclosure describes the features of the adjustable-rate mortgage (ARM) program you are considering. Information on other ARM programs is available upon request.

## HOW YOUR INTEREST RATE AND PAYMENTS ARE DETERMINED

- Your interest rate will be based on an index plus a margin.
- Your payment will be based on the interest rate, loan balance, and loan term.
- The interest rate will be based on: **The Average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market (LIBOR), based on quotations of major banks, known as the six month libor index.**

_____ (your index), plus our margin. Ask us for our current interest rate and margin.
- Information about the index rate can be found: Index values are published in the **Money Rates section of the Wall Street Journal.**
- [X] Your initial interest rate is not based on the index used to make later adjustments. Ask us for the current amount of our adjustable-rate mortgage discounts or premiums.

## HOW YOUR INTEREST RATE CAN CHANGE

- Your interest rate will not change for the first 24 months of your loan.
- After the first 24 months, your interest rate can change every 6 months.
- Each date on which your interest rate can change is called a "Change Date" and will be described in your loan documents.
- On each Change Date, your interest rate will equal the index plus the margin, rounded [ ] up [ ] down [X] up or down to the nearest .125 %, unless your interest rate "caps" or "floors" (described below) limit the amount of change in the interest rate.
- Your interest rate cannot increase more than 6.000% percentage points above the initial interest rate over the term of the loan.
- Your interest rate cannot decrease more than .000% percentage points below the initial interest rate over the term of the loan.
- On the first Change Date, your interest rate cannot increase more than 3.000% percentage points above, or decrease more than .000% percentage points below the initial interest rate.
- On the second Change Date and every Change Date thereafter, your interest rate cannot increase or decrease more than 1.000% percentage points.

## HOW YOUR PAYMENT CAN CHANGE

- Following the initial 24 months of your loan, your monthly payment can increase or decrease substantially every 6 months based on changes in the interest rate.
- Your new payment will be due beginning with the first payment due date after the Change Date on which the related interest rate change occurred, and will be your payment until the first payment due date after the next Change Date.
- For example, on a $10,000, 30 -year term loan with an initial interest rate of 6.780 % (based on the 4.447 % index value rate in effect on NOVEMBER, 2005 , plus a margin of 5.780 % and [X] less a discount [ ] plus a premium of 3.447 %, rounded as provided above), the maximum amount that the interest rate can rise under this program is 6.000 percentage points to 12.780 % and the monthly payment can rise from a first year payment of $ 65.06 to a maximum of $ 106.89 in the 4th year. To see what your monthly payments would be, divide your mortgage amount by $10,000; then multiply the monthly payment by the resulting amount.
(For example, the monthly payment for a mortgage amount of $60,000 would be $60,000 divided by $10,000 = 6; 6 times $ 65.06 = $ 390.36 per month.)
- You will be notified in writing at least 25 days, but not more than 120 , days before the due date of a payment at a new level. This notice will contain information about the index and interest rates, payment amount, and loan balance.

## OTHER INFORMATION

- This obligation [ ] does [X] does not have a demand feature.

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.

| | | | |
|---|---|---|---|
| _Signature_ | 12/9/05 | _Signature_ | 12/9/05 |
| Applicant SAREL J. VORSTER | Date | Applicant TRUDIE M. VORSTER | Date |
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

DocMagic EForms 800-649-1362
www.docmagic.com

INSTR # 2005583297
O BK 15883 PG 0847
Pgs 0847 - 867; (21 pgs)
RECORDED 12/15/2005 01:31:58 PM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 1,370.60
INT. TAX PD(F.S.199) 783.03
DEPUTY CLERK B King

This Instrument Prepared By:
KATHLEEN RYDER

After Recording Return To:
LIBERTY HOME LOAN CORPORATION
3030 NORTH ROCKY POINT DRIVE, SUITE 530
TAMPA, FLORIDA 33607
Loan Number: 2005511136
RECORD & RETURN TO:
CROSSTOWN CLOSING SERVICES
915-A S. PARSONS AVE.
BRANDON, FL 33511

05011470

———————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

MIN: 1002837-1200404020-6

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 9, 2005              , together with all Riders to this document.
(B) "Borrower" is SABEL J. VORSTER AND TRUDIE M. VORSTER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is LIBERTY HOME LOAN CORPORATION

Lender is a CORPORATION                                                                          organized
and existing under the laws of FLORIDA
Lender's address is 3030 NORTH ROCKY POINT DRIVE, SUITE 530, TAMPA, FLORIDA 33607

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 9, 2005
The Note states that Borrower owes Lender THREE HUNDRED NINETY-ONE THOUSAND FIVE HUNDRED FIFTEEN AND 00/100      Dollars (U.S. $ 391,515.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

BEST IMAGE(S)

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic *800-649-1362*
Form 3010 1/01                              Page 1 of 16                              www.docmagic.com



(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☒ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider  ☒ Other(s) [specify]
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider     PREPAYMENT RIDER TO
                                                         SECURITY INST

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                    Page 2 of 15                    DocMagic eForms 800-649-1362
                                                                  www.docmagic.com

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY of HILLSBOROUGH

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 31292133N00000000003

which currently has the address of 2106 DILLON COURT

[Street]

VALRICO              , Florida    33594    ("Property Address"):
[City]                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 6 of 15
DocMagic 800-649-1362
www.docmagic.com

Book15883/Page851

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower,

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 7 of 15
DocMagic EForms 800-649-1362
www.docmagic.com

Book15883/Page853

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

---

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                     Page 9 of 16          DocMagic eForms 800-649-1362
                                                         www.docmagic.com

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  Notices.  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other

means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                               Page 11 of 16                          DocMagic eForms 800-649-1362
                                                                                    www.docmagic.com

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 12 of 16

DocMagic ℰℱℴℛℳℐℰ 800-649-1362
www.docmagic.com

or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

DocMagic ☼☼☼☼☼ 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SAREL J VORSTER            -Borrower

_____ (Seal)
TRUDIE M. VORSTER          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness   Patti Dulaney

_____
Witness   LORRAINE McFARLAND

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 14 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

Book15883/Page860

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this 9 day of Dec, 2005
by SAREL J. VORSTER, TRUDIE M. VORSTER

who is personally known to me or who has produced _____
as Identification.                                (Type of Identification)

_____
Signature

_____
Name of Notary

(Seal)                                _____
                                      Title

                                      _____
                                      Serial Number, If any

PATTI B. DULANEY
MY COMMISSION # DD 265348
EXPIRES: November 20, 2007
Bonded Thru Notary Public Underwriters

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic eForms 800-649-1362
Form 3010 1/01                      Page 16 of 16                                 www.docmagic.com

Loan Number: 7200511136

Date: DECEMBER 9, 2005

Property Address:    2106 DILLON COURT, VALRICO, FLORIDA 33594

EXHIBIT "A"

LEGAL DESCRIPTION

Lot 3, Dillon Acres according to map or plat thereof as recorded in Plat Book 40, Page 71, of the Public Records of Hillsborough County, Florida; and

The East 15 feet of the south 80 feet, more or less, of the following described land, to -wit;

The West 231.4 feet of the South 302.13 feet of Lot 62 of Van Sant Subdivision, according to Plat thereof recorded in Plat book 8, page 44 of the public records of Hillsborough County, Florida, said strip of land extending from South end of Public road, which occupies a portion of said tract of land, to an connecting with, Lot 3 of Dillon Acres Subdivision, as same is recorded in Plat Book 40, page 71, of said public records, and;

The South 38 feet of the West 231.4 feet of Lot 62 Van Sant Subdivision, as recorded in plat book 8, Page 44, of the public records of Hillsborough Couonty, Florida, less the East 15 feet thereof

A.P.N. # : 31292133N00000000003

DocMagic @Invinte 800-649-1363
WWW.docmagic.com

Book15883/Page862

MIN: 1002837-1200404020-6          Loan Number: 7200511136

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
### - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 9th day of DECEMBER, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to LIBERTY HOME LOAN CORPORATION, CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2106 DILLON COURT, VALRICO, FLORIDA 33594

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     6.780 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)    Change Dates
The interest rate I will pay may change on the 1st     day of JANUARY, 2008, and on that day every 6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 1 of 3          DocMagic *eForms* 800.649.1362
                                                      www.docmagic.com

Book15883/Page863

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 780/1000 percentage points ( 5.780 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.780 % or less than 5.780 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.780 %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                         Page 2 of 3

DocMagic ⊜ 800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SAREL J. VORSTER          -Borrower

_____ (Seal)
TRUDIE M. VORSTER         -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Book15883/Page865

# PREPAYMENT RIDER

Loan Number: 7200511136

Date: DECEMBER 9, 2005

Borrower(s): SAREL J. VORSTER, TRUDIE M. VORSTER

THIS PREPAYMENT RIDER (the "Rider") is made this 9th day of DECEMBER , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of LIBERTY HOME LOAN CORPORATION, CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

2106 DILLON COURT, VALRICO, FLORIDA 33594
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**5   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWENTY-FOUR (  24   ) months after the date the Security Instrument is executed, I make a full Prepayment, I will pay a Prepayment charge in an amount equal to  FIVE       percent (   5.000   %) of the outstanding loan balance.

PREPAYMENT RIDER
11/25/03                                      Page 1 of 2                          DocMagic eForms 800-649-1362
                                                                                   www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
SAREL J. VORSTER  -Borrower

_____ (Seal)
TRUDIE M. VORSTER  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PREPAYMENT RIDER
11/25/03

Page 2 of 2

DocMagic CForms 800 649-1362
www.docmagic.com

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH)
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE. WITNESS MY HAND AND OFFICIAL SEAL
THIS ___ DAY OF _____ 20__
PAT FRANK
CLERK OF CIRCUIT COURT
BY_____ D.C.

Book15883/Page867

INSTRUMENT#: 2009409485, BK: 19610 PG: 63 PGS: 63 – 63 12/09/2009 at 02:38:07
PM,     DEPUTY CLERK:BLOGGANS Pat Frank,Clerk of the Circuit Court
Hillsborough County

# THIS IS NOT A
# CERTIFIED COPY

DANIEL C. CONSUEGRA
ATTORNEY AT LAW
9204 King Palm Drive
Tampa, Florida 33619-1328
CFM v. Vorster, Sarel J.

PREPARED BY & RETURN TO:                                              Assigned Code 145
M. B. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd, # 100
Southlake, TX 76092          **Assignment of Mortgage**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS") SOLELY AS NOMINEE FOR LIBERTY HOME LOAN CORPORATION G4318 Miller Road, Flint, MI
48507 (Assignor) by these presents does assign and set over, without recourse, to CITIMORTGAGE, INC.  4050 Regent
Blvd, Mail Stop N2A-222, Irving, TX 75063 (Assignee) the described mortgage, together with certain note(s) described with all
interest, all liens, any rights due or to become due thereon, executed by SAREL J VORSTER AND TRUDIE K VORSTER,
HUSBAND AND WIFE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS') SOLELY AS
NOMINEE FOR LIBERTY HOME LOAN CORPORATION.   Said mortgage Dated: 12/9/2005 is recorded in the State of FL,
County of Hillsborough on 12/15/2005, Book 15883 Page 0847 Instrument 2005583297 AMOUNT: $ 391,515.00
Property Address: 2106 DILLON COURT, VALRICO, FL 33594
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its
proper officer. Executed on: November 13, 2009
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR LIBERTY HOME
LOAN CORPORATION

By: _____

D. M. Wileman, Vice President

VORSTER  MM  *99110885*

State of Texas  County of Tarrant
      On 11/13/2009, before me, the undersigned, D. M. Wileman, personally known to me, acknowledged that he/she is
Vice President of/  for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE
FOR LIBERTY HOME LOAN CORPORATION and that he/she executed the foregoing instrument and that such execution was
done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS
NOMINEE FOR LIBERTY HOME LOAN CORPORATION.

J. FLORES
Notary Public, State of Texas
My Commission Expires
October 28, 2013

Notary public, J. Flores
My commission expires: October 28, 2013

MIN 100283712004040206 MERS Phone 888-679-6377
FL  Hillsborough                          AHESPIP/CONSUGRA/ASO


EXHIBIT
C

INSTRUMENT#: 2013307619, BK: 22074 PG: 31 PGS: 31 - 31 08/13/2013 at 09:06:01
AM, DEPUTY CLERK:SWILLIAMS Pat Frank,Clerk of the Circuit Court
Hillsborough County

THIS IS NOT A
CERTIFIED COPY

PREPARED BY & RETURN TO:                                          Assigned Code 145
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092                **Assignment of Mortgage**          Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, CITIMORTGAGE, INC. 4050 REGENT BLVD, MS N2A-222, IRVING,
TX 75063 (Assignor) by these presents does assign and set over, without recourse, to CHRISTIANA TRUST, A DIVISION
OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN
TRUST, SERIES 2013-9 1610 E. St. Andrew Place, Suite B, Santa Ana, CA 92705 (Assignee) the described mortgage
with all interest, all liens, any rights due or to become due thereon, executed by SAREL J. VORSTER AND TRUDIE M.
VORSTER, HUSBAND AND WIFE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS
NOMINEE FOR LIBERTY HOME LOAN CORPORATION ITS SUCCESSORS AND ASSIGNS. Said mortgage Dated:
12/9/2005 is recorded in the State of FL, County of Hillsborough on 12/15/2005, Book 15883 Page 0847 Instrument
2005583297 AMOUNT: $ 391,515.00   Property Address: 2106 DILLON COURT, VALRICO, FL 33594
IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument
by its proper officer. Executed on: August 12, 2013

VORSTER   MFC  *13064143*

CITIMORTGAGE, INC.

By: _____
     M. E. Wileman, Authorized Signator                          (SEAL)

State of Texas  County of Tarrant
       On 08/12/2013, before me, the undersigned, M. E. Wileman, personally known to me, acknowledged that he/she is
Authorized Signator of/  for CITIMORTGAGE, INC. and that he/she executed the foregoing instrument and that such
execution was done as the free act and deed of CITIMORTGAGE, INC. .

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2014
                                                        _____
                                                        Notary public, C. Lafferty
                                                        My commission expires: November 30, 2014

FL  Hillsborough                              CITICAP/WL19-2013/AS

EXHIBIT
D

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA, IN AND FOR
HILLSBOROUGH COUNTY CIVIL DIVISION

Case No: 09-CA-030141

CHRISTIANA TRUST, A DIVISION OF
WILMINGTON SAVINGS FUND SOCIETY,
FSB, AS TRUSTEE OF NORMANDY MORTGAGE
LOAN TRUST, SERIES 2013-9,

                    Plaintiff(s),
v.

SAREL J. VORSTER; et al.,

                    Defendant(s).
_____/

## CONSENT FINAL JUDGMENT OF FORECLOSURE

THIS ACTION was heard before the Court at Trial on the 21st day of August, 2014. Based on the evidence presented and being otherwise fully informed in the premises,

IT IS ADJUDGED that:

1.    Judgment is GRANTED in favor of the Plaintiff. Service of process has been duly and regularly obtained over, SAREL J. VORSTER; UNKNOWN SPOUSE OF SAREL J. VORSTER; TRUDIE M. VORSTER; UNKNOWN SPOUSE OF TRUDIE M. VORSTER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LIBERTY HOME LOAN CORPORATION, Defendants.

2.    There is due and owing to the Plaintiff the following:

| | |
|---|---|
| Principal due on the note secured by the mortgage foreclosed: | $376,771.96 |
| Interest on the note and mortgage from 11/01/09 to 08/21/14 | $116,896.93 |
| Late Charges | $1,063.14 |
| Expenses | $84.00 |
| SUBTOTAL | $494,816.03 |
| TOTAL SUM | $494,816.03 |

3.    The total sum referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest.

4.    The Judgment is *in rem* only, and Plaintiff is not entitled to damages, costs, or attorneys' fees against Defendants, nor is Plaintiff entitled to seek any deficiency or deficiency judgment.


EXHIBIT
E

5.     Plaintiff, whose address is, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9, 335 Pineda Court, Suite 101, Melbourne, FL 32940, holds a lien for the total sum specified in Paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116. The plaintiffs lien encumbers the subject property located in Hillsborough County, Florida and described as:

LOT 3, DILLON ACRES ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 40, PAGE 71, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA: AND THE EAST 15 FEET OF THE SOUTH 80 FEET, MORE OR LESS, OF THE FOLLOWING DESCRIBED LAND, TO-WIT; THE WEST 231.4 FEET OF THE SOUTH 302.13 FEET OF LOT 62 OF VAN SANT SUBDIVISION, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 8, PAGE 44 OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, SAID STRIP OF LAND EXTENDING FROM SOUTH END OF PUBLIC ROAD, WHICH OCCUPIES A PORTION OF SAID TRACT OF LAND, TO AN CONNECTING WITH, LOT 3 OF DILLON ACRES SUBDIVISION, AS SAME IS RECORDED IN PLAT BOOK 40, PAGE 71, OF SAID PUBLIC RECORDS, AND; THE SOUTH 38 FEET OF THE WEST 231.4 FEET OF LOT 62 VAN SANT SUBDIVISION, AS RECORDED IN PLAT BOOK 8, PAGE 44, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA, LESS THE EAST 15 FEET THEREOF.

Property Address: 2106 Dillion Court, Valrico, Florida 33594

6.     If the total sum with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _____10-10_____, 20 17, at 10:00 A.M. to the highest bidder for cash, except as prescribed in Paragraph 8, online at www.hillsborough.realforeclose.com after having first given notice as required by Section 45.031, Florida Statutes. At least three (3) days prior to the sale, Plaintiff must pay the costs associated with the Notice of Publication.

7.     Plaintiff shall advance all subsequent required costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiffs bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.

8.     If Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 5 herein, Plaintiff may, by written motion served on all parties, seek to amend this final judgment to include said additional expenses.

9.    On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate, unless the property is purchased by a third party bidder; third, plaintiffs attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 3 from this date to the date of the sale; and by retaining any remaining amount pending further Order of this Court.

10.    On filing of the Certificate of Title, defendant and all persons claiming under or against defendant since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property. On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

11.    Pursuant to Florida Statutes, Section 45.031:

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT AT (813) 276-8100 WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT BAY AREA LEGAL SERVICES, INC AT (813) 232-33603, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS.

12.    The Plaintiff may assign the judgment and credit bid by the filing of an assignment without further order of the court.

13.     The court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, orders authorizing writs of possession and an award of attorney's fees, and to enter deficiency judgments if the borrower has not been discharged in bankruptcy.

DONE AND ORDERED in chambers at Hillsborough County, Florida, this _____ day of _____, 2014.

John J. Schreiber, Esq.
Storey Law Group, P.A.
3191 Maguire Blvd Ste 257
Orlando, Florida 32803
Florida Bar No: 62249

ORIGINAL SIGNED

AUG 21 2014

PERRY A. LITTLE
SENIOR CIRCUIT JUDGE

David Thorpe, Esq
The Thorpe Law Firm, P.A.
7819 N. Dale Mabry Hwy St 108
Tampa, FL 33614
Florida Bar No: 0110523

_____
Circuit Judge

Copies furnished to:

John J. Schreiber, Esq.
Storey Law Group, P.A.
3191 Maguire Blvd Ste 257
Orlando, Florida 32803

Mortgage Electronic Registration Systems, Inc., as
Nominee for Liberty Home Loan Corporation,
Electronic Data Systems, LLC
1901 E. Voorhees Street, Suite C
Danville, IL 61834

David Thorpe, Esq.
The Thorpe Law Firm, P.A.
7819 N Dale Mabry Hwy Ste 108
Tampa, FL 33614



**Bob Henriquez**
**Hillsborough County Property Appraiser**

https://www.hcpafl.org/
15th Floor County Ctr.
601 E. Kennedy Blvd, Tampa, Florida 33602-4932
Ph: (813) 272-6100

# Folio: 086687-0000



## Owner Information

| | |
|---|---|
| Owner Name | VORSTER SAREL J<br>VORSTER TRUDIE M |
| Mailing Address | 2106 DILLON CT<br>VALRICO, FL  33596-5205 |
| Site Address | 2106 DILLON CT, VALRICO |
| PIN | U-31-29-21-33N-000000-00003.0 |
| Folio | 086687-0000 |
| Prior PIN | |
| Prior Folio | 000000-0000 |
| Tax District | U - UNINCORPORATED |
| Property Use | 0100 SINGLE FAMILY R |
| Plat Book/Page | 40/71 |
| Neighborhood | 223007.00 | Buckhorn Golf Course Area |
| Subdivision | 33N | DILLON ACRES |

## Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $226,290 | $156,463 | $50,000 | $106,463 |
| Public Schools | $226,290 | $156,463 | $25,000 | $131,463 |
| Municipal | $226,290 | $156,463 | $50,000 | $106,463 |
| Other Districts | $226,290 | $156,463 | $50,000 | $106,463 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.

## Sales Information

| Book | Page | Month | Year | Type Inst | Qualified or Unqualified | Vacant or Improved | Price |
|---|---|---|---|---|---|---|---|
| 15883 | 0845 | 12 | 2005 | WD | Qualified | Improved | $489,400 |
| 14116 | 1554 | 07 | 2004 | QC | Unqualified | Improved | $100 |
| 12859 | 1281 | 07 | 2003 | WD | Qualified | Improved | $255,000 |
| 5031 | 0951 | 01 | 1987 | WD | Qualified | Improved | $159,500 |
| 2324 | 0974 | 01 | 1971 | | Qualified | | $43,100 |



EXHIBIT
F

## Building Information

### Building 1

| | |
|---|---|
| Type | 01 | SINGLE FAMILY |
| Year Built | 1970 |

### Building 1 Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Masonry or Concrete Frame |
| Exterior Wall | 7 | Masonry Stucco |
| Roof Structure | 3 | Gable or Hip |
| Roof Cover | 3 | Asphalt/Comp. Shingle |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 8 | Carpet |
| Interior Flooring | 4 | Vinyl |
| Heat/AC | 2 | Central |
| Architectural Style | 5 | Contemporary 1-Story |
| Condition | 3 | Average |
| Bedrooms | 5.0 | |
| Bathrooms | 3.0 | |
| Stories | 1.0 | |
| Units | 1.0 | |



### Building 1 subarea

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| BAS | 2,619 | 2,619 | $104,542 |
| USP | 200 | | $1,996 |
| FST | 180 | | $3,593 |
| FGR | 440 | | $8,782 |
| FOP | 263 | | $2,635 |

## Extra Features

| OB/XF Code | Description | Building | Year On Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|
| 0595 | FIREPLACE | 1 | 1970 | 0 | 0 | 1.00 | $2,635 |
| 0050 | CONCRETE PATIO | 1 | 1970 | 24 | 14 | 336.00 | $872 |
| 0440 | GARAGE CB | 1 | 1970 | 32 | 24 | 768.00 | $10,714 |
| 0120 | DECK WOOD | 1 | 1994 | 27 | 20 | 540.00 | $2,268 |
| 0651 | SHED NOT PERMANENTLY AFFIXED | 1 | 2004 | 16 | 12 | 192.00 | $0 |

## Land Information - Total Acreage:

| Use Code | Description | Zone | Front | Depth | Land Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|
| REC0 | Res SF Class 3.00 | RSC-4 | 151.00 | 233.00 | SE \| SF LOTS W/ EFF SIZE | 35,183.00 | $88,239 |
| 9400 | RIGHT-OF-WAY | RSC-4 | 0.0 | 0.0 | AC \| ACREAGE | 0.03 | $15 |

## Legal Description

Legal Description    DILLON ACRES LOT 3 AND THAT PT OF LOT 62 VAN SANT SUB DESC AS BEG AT SW COR AND RUN N 38 FT E 216.4 FT N 42.92 FT E 15 FT S 80.92 FT AND W 231.4 FT TO BEG